IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RICHARD B. GOODIN,<br><br>Plaintiff,<br><br>vs.<br><br>FIDELITY NATIONAL TITLE INSURANCE CO.,<br><br>Defendant. | ) | CIVIL NO. 07-00074 DAE-BMK<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

This matter came before the court for trial on August 21, 2008. Plaintiff Richard B. Goodin appeared pro se. Regan M. Iwao, Esq., and Jessica M. Mickelsen, Esq., appeared on behalf of Defendant Fidelity National Title Insurance Co.

As a preliminary matter, this court took up Plaintiff's Detailed List of Estimated Damages, filed earlier that morning. (Doc. 71.) In the course of those proceedings, Defendant moved to dismiss for lack of subject matter jurisdiction, and Plaintiff moved for leave to amend his complaint.

For the reasons set forth below, Defendant's motion to dismiss is GRANTED, and Plaintiff's motion to amend is DENIED.

## I. INTRODUCTION

On November 4, 2005, Plaintiff Richard Goodin ("Goodin") purchased certain real property (the "Property") from Jack Thompson ("Thompson"), who conveyed the Property by warranty deed. On January 10, 2006, Goodin recorded this deed and obtained a title insurance policy on the Property from Defendant Fidelity National Title Insurance Co. ("Fidelity"). At the time, Larry and Carol Wright (the "Wrights") had been living in the Property as Thompson's tenants. On February 6, 2006, Goodin asked Fidelity to defend him in lawsuits against the Wrights regarding the Property. Fidelity's refusal to provide legal representation to Goodin is the basis for this action.[1]

## II. DEFENDANT'S MOTION TO DISMISS

In the August 21, 2008, hearing, Fidelity made an oral motion to dismiss for lack of subject matter jurisdiction. The motion is granted.

### A. Legal Standard

Federal courts are courts of limited jurisdiction, and possess only that power authorized by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). This court has "original

[1] Goodin also asserted claims of legal malpractice and fraud against attorneys Cynthia Linet, Jade Lynne Ching, and Shellie K. Park-Hoapili, and the law firm Alston Hunt Floyd & Ing. All were dismissed on summary judgment. (Doc. 33.)

jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states..." 28 U.S.C. § 1332. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). A court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action, even on appeal. *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002), *citing Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 49-50 (9th Cir. 1972); *see also McNutt v. General Motors Acceptance Corp.*, 1936, 298 U.S. 178 (1936) (holding that the courts, on their own motion, are under a duty to raise the question of lack of federal jurisdiction at any time that such lack appears). The parties cannot stipulate to federal jurisdiction where none exists. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089 (9th Cir. 2003).

When a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence. *See McNutt*, 298 U.S. 178, 189 (1936). Once jurisdiction is challenged, "if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover

that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

In analyzing whether federal court jurisdiction is proper, the court may rely on summary judgment-type evidence in determining the amount in controversy. *Matheson v. Progressive Specialty Ins. Co.*, 319, F.3d 1089, 1090 (9th Cir. 2003). Conclusory allegations as to the amount in controversy are insufficient. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003), *citing Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).

**B. Discussion**

On its face, Goodin's complaint alleges an amount in controversy of $10 million in "general damages and punitive damages for the breach of contract, legal malpractice and legal fraud perpetrated by the Defendants," which is well in excess of the $75,000 required by 28 U.S.C. 1332(a). When a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but the court questions the legitimacy of the amount alleged, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence. *McNutt*, 298 U.S. at 189 (1936). In light of the summary judgment evidence

before the court, as well as Goodin's Detailed List of Damages, it appears to a legal certainty that Goodin's claim is really for less than the jurisdictional amount.

**1. Breach of Contract**

Goodin stated a claim against Fidelity for breach of contract. In a breach of contract action, the plaintiff has the burden of proving damages. *Malani v. Clapp*, 542 P.2d 1265 (Haw. 1975).[2] The extent of a plaintiff's loss for breach of contract must be shown with reasonable certainty, which excludes any showing or conclusion founded upon mere speculation or guess. *Uyemura v. Wick*, 551 P.2d 171 (Haw. 1976); *Ferreira v. Honolulu Star-Bulletin, Ltd.*, 356 P.2d 651 (Haw. 1960).

Damages for emotional distress and mental suffering are generally not recoverable in contract. *Francis v. Lee Enterprises, Inc.*, 971 P.2d 707 (Haw. 1999). Similarly, punitive damages are not recoverable in contract, "absent conduct that violates a duty that is independently recognized by principles of tort law." *Id.* at 242; *see also* HRS § 431:10-240.

Were Goodin to prevail, he would be entitled to (a) the costs he has incurred in his lawsuits against the Wrights, as the bargained-for benefit; (b) the

[2] Although the amount in controversy for purposes of federal jurisdiction is a federal question, the court must look to state law to determine the nature and extent of the right to be enforced in a diversity case. *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53 (1961) (citations omitted).

costs he has incurred in this case;[3] and (c) any consequential damages he has incurred as a result of Fidelity's breach.

Goodin claims to have incurred legal fees totaling $10,475.12, as well as $24,230.28 in other costs and expenses. Goodin was unable to state any consequential damages incurred as a result of Fidelity's alleged breach.

Attorney Cynthia Linet represented Goodin in state court from January 13, 2006, until January 30, 2006. In return for her services, Goodin paid her a flat fee of $750.00, which included filing fees, but was refunded $500.00, resulting in a net fee of $250.00. Attorneys Jade Lynne Ching and Shellie K. Park-Hoapili, of Alston Hunt Floyd & Ing ("AHFI"), represented Goodin from March 13, 2006, until June 12, 2006. Goodin was billed $10,225.12 for their services, but informed this court that he has not paid any of this amount, other than a $1,000.00 retainer. Plaintiff has proceeded pro se since AHFI's withdrawal, incurring no additional legal fees.

In his Detailed List of Damages, Goodin claims $24,230.28 in other costs and expenses, including $17,498.11 in travel expenses. Even assuming could

---

[3] A policyholder who prevails in a suit against an insurer who has contested its liability is entitled to reasonable attorney's fees and the costs of suit, in addition to the benefits under the policy. HRS § 431:10-242.

prove all of these expenses, Goodin has only incurred damages totaling $34,705.40, less than half of the jurisdictional amount.

When asked if he had any other damages, Goodin claimed that he could lose his house, which would increase his damages by the purchase price of $125,000, thereby satisfying the jurisdictional requirement. Goodin admitted that his title to the Property had been cleared in his state court case, but argued that because a final judgment had not been entered, the state court could still reverse its decision and take his house away. It is well-established that damages cannot be based on mere speculation or guesswork. *See e.g. Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 125 (1969); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 824 (9th Cir. 2001). *See also State v. Davis*, 499 P.2d 663, 670 (Haw. 1972) ("Mere fear of contingent injury which may never occur, and the happening of which is speculative and uncertain, is not a showing of damage."). The mere possibility that Goodin may lose the Property in his state court case is speculative and does not confer jurisdiction on this court.

**2. Legal Malpractice and Fraud**

Ordinarily, validly plead punitive damages claim can be aggregated with other claims of damage when determining whether the jurisdictional amount has been met is longstanding. *Bell v. Preferred Life Asur. Soc'y*, 320 U.S. 238,

240, 64 S. Ct. 5, 88 L. Ed. 15 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount"); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Goodin could have been awarded both punitive and compensatory damages on his claims for legal malpractice and fraud. However, these claims were dismissed on summary judgment. (Doc. 33.)

Where the existence of the requisite amount in controversy is challenged, the court looks beyond the mere allegation that Defendants were liable for punitive damages, determining whether the summary judgment proofs established to a legal certainty whether Goodin ever had a valid claim for punitive damages.

Goodin alleges legal malpractice claims against his attorneys Cynthia Linet, Jade Lynne Ching, Shellie K. Park-Hoapili, and Alston Hunt Floyd & Ing, which were dismissed on summary judgment. (Doc. 33.)

This court dismissed Goodin's fraud claims as well. (Doc. 33.) Construing the complaint liberally, by alleging legal fraud, Goodin appears to claim that Ms. Ching interfered with his ability to sell the Property which could

have affected the amount in controversy.[4] Specifically, Goodin writes that on May 9, 2006, he told Jade Ching that he "might sell the house." (Compl. ¶ 19.) Goodin then claims that Ms. Ching's filing of a complaint and recording of a notice of pendency of action "stopped any possibility of any thought of selling." *Id.*

Ms. Ching recorded a Notice of Pendency of Action with the Bureau of Conveyances on June 19, 2006. The Wrights recorded their Notice of Pendency of Action with the Bureau of Conveyances on February 16, 2006, four months earlier. Both notices were against the same property. Ms. Ching's Notice changed nothing and cannot be the proximate cause of Plaintiff's damages.

Goodin did not prove he was entitled to punitive damages by a preponderance of the evidence during the summary judgment phase of these proceedings. Moreover, Goodin's claims of legal malpractice and legal fraud were dismissed based on the competent evidence before the court. Because these claims were dismissed and because punitive damages are not available under contract, Goodin cannot include punitive damages in the amount in controversy.

---

[4] Goodin also alleged that Fidelity had engaged in conspiracy to commit fraud. (Compl. ¶ 20.) However, Goodin failed to state a case for fraud against Defendants Ching and Park-Hoapili, Doc. 33 at 21, and Goodin does not allege that Fidelity committed a fraud. Civil conspiracy alone cannot provide a basis for liability and must be accompanied by injury from a tortious act. *Beck v. Prupis*, 529 U.S. 494, 501-03 (2000) (citations omitted). In the absence of an underlying tortious act, Goodin's civil conspiracy claim must also fail, leaving only the breach of contract claim against Fidelity.

It is now apparent that there was never a sufficient amount in controversy to meet the requirements of § 1332. At most, Goodin can recover $10,475.12 for legal fees, plus $24,230.28. In total, the amount in controversy is $34,705.40 and, therefore, fails to meet the requirements for federal diversity jurisdiction. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3) As such, the court dismisses this action, without prejudice, for lack of jurisdiction.

## III. PLAINTIFF'S MOTION TO AMEND

In the August 21, 2008, hearing, this court explained that because Plaintiff had not asserted any federal claim, the only possible basis for federal jurisdiction was diversity jurisdiction which required an amount in controversy of $75,000. In an attempt to create federal jurisdiction, Plaintiff orally moved the court for leave to amend his complaint to add claims that his constitutional rights had been violated by (1) the judge in his state case; (2) Circuit Court the Third Circuit of Hawaii; and (3) the clerk of that court. For the reasons below, Plaintiff's motion to amend his complaint is denied.

**A. Legal Standards**

After an Answer has been served, a party may amend his complaint only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Leave to amend should be freely given "when justice so requires." *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). However leave to amend "is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (holding that the district court may deny a motion for leave to amend if permitting an amendment would, among other things, cause an undue delay in the litigation or prejudice the opposing party).

Whether to grant leave to amend a complaint is within the discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). A district court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008) (*quoting Foman*, 371 U.S. at 182).

Under the Eleventh Amendment, an unconsenting state is immune from suits by its own citizens as well as by citizens of another state. U.S. Const. amend. XI; *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004). The Eleventh Amendment bars a lawsuit by a citizen against a state court because a state court is an arm of the state. *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (*citing Will v. Michigan Department of State Police*, 491 U.S. 58, 70 (1989) (holding that arms of the State for Eleventh Amendment purposes are not liable under § 1983); *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987) (holding that state courts are arms of the state for Eleventh Amendment purposes)). Moreover, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). As such, it is no different from a suit against the state itself. *See e.g. Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985).

A judge is absolutely immune from suits for money damages for judicial acts.[5] *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003). Judicial immunity is

[5] Judicial immunity is overcome in only two sets of circumstances: (1) a judge is not immune from liability for nonjudicial actions; and (2) a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11 (citations omitted). Based on Goodin's representations, neither appears to apply.

not overcome by allegations of bad faith or malice. *Mireles*, 502 U.S. at 11. "This immunity applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

Court clerks are entitled to absolute immunity from liability for damages "when they perform tasks that are an integral part of the judicial process." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1142 (9th Cir. 2001) (*quoting Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1390 (9th Cir. 1987)). Moreover, a clerk of court may be afforded quasi-judicial immunity for official duties, even those not strictly judicial. *Pomerantz v. Los Angeles County*, 674 F.2d 1288, 1291 fn. 1 (9th Cir. 1982). As government officials, court clerks are shielded by qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brittain v. Hansen*, 451 F.3d 982, 977 (9th Cir. 2006) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1986); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")).

**B. Discussion**

Goodin seeks to add claims and parties which are unrelated to the claims asserted in the complaint. As noted above, Goodin seeks to add claims

against (1) the judge in his state case; (2) Circuit Court the Third Circuit of Hawaii; and (3) the clerk of that court. Goodin claims that the prospective defendants violated his due process rights in their handling of his lawsuits.

The Eleventh Amendment bars Goodin from filing suit in this court against the Circuit Court, or against either the judge or the clerk in their official capacities. In addition, the judge has absolute immunity for judicial acts, and the clerk has immunity for tasks which are an integral part of the judicial process. To the extent that Goodin's claims are barred by these immunities, his motion to amend is denied for futility.

Goodin's motion is untimely. The deadline for motions to amend pleadings or add parties was November 2, 2007. (Doc. 37.) Goodin made his motion to amend his complaint on the morning of trial, almost ten months after the deadline and over eighteen months after the complaint was filed. The trial in his state court case occurred on July 10, 2007, and Finding of Fact were issued on January 18, 2008, seven months before Goodin's motion to amend. *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (holding that an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable). While mere delay in seeking to amend is not grounds to deny amendment, leave need not be granted where other factors exist which would

warrant denial. *See Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (affirming the district court's finding of prejudice to defendants sufficient to deny amendment where the motion to amend came at the eleventh hour, when summary judgment was pending and the discovery period had closed).

This action is a simple breach of contract suit, the issues are relatively uncomplicated, and a trial should have been comparatively short. To add a civil rights claims and new parties would unduly complicate the issues, and would result in unnecessary confusion and unjustifiable delay. This case is not the appropriate vehicle for addressing those claims, which are far too tangential to Goodin's breach of contract action against Fidelity. *See M/V American Queen v. San Diego Marine Constr.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (holding leave to amend a complaint may be denied where the new allegations would totally alter the basis of the action, in that they cover different acts, persons and time periods, necessitating additional discovery).

Allowing Goodin to amend his complaint would cause undue delay in a case that was ready to proceed to trial. Moreover, Fidelity would be prejudiced by the delay itself, and in having to participate in this case, thus incurring additional legal expenses, as the entire litigation process began anew. Goodin is not prejudiced by denial of his motion to amend, because he is free to pursue his

civil rights claims in a separate action under 28 U.S.C. § 1983, subject to the relevant statutes of limitation.

A district court may deny leave to amend due to undue delay, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Leadsinger*, 512 F.3d at 532 (9th Cir. 2008). Given that granting leave to amend would cause undue delay and prejudice to Fidelity, and that Goodin would not be prejudiced by a denial, the interests of justice do not require granting leave to amend here.

Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (*quoting Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998)). Based on the information before the court, including Plaintiff's written and oral representations regarding his damages, amendment would be futile because Plaintiff's claims cannot place into controversy a sum or value adequate to establish jurisdiction.

However, because Goodin is proceeding pro se and has raised the possibility, however unlikely, that the state court will reverse itself and divest from him ownership in the subject property, this dismissal is without prejudice to

refiling if Goodin later incurs damages sufficient to confer upon this court subject matter jurisdiction.

**IV. CONCLUSION**

1. Defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED. This action is DISMISSED without prejudice.

2. Plaintiff's motion for leave to amend his complaint is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 9, 2008.




David Alan Ezra
United States District Judge

*Goodin v. Fidelity*, Civ. No. 07-00074 DAE-BMK; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND; allison/Orders 08/Goodin 07-74 DAE-BMK (dism SMJ dny amd)